Case No. 16-5047. ANSWER Coalition. Asked to stop war and end racism. Appellant, Braylon Scott Hagler. Pastor, Plymouth Congregational Church, et al. v. W. Ross Basham. In official capacity as Director, U.S. Ticket Service. Consolidated Jewels Secretary, United States Department of the Interior. Ms. Verhagen Hiller for the appellant. Ms. Roswell for Appalachian Basham, et al. Good morning, Your Honors. May it please the Court. Mara Verhagen Hilliard of the Partnership for Civil Justice Fund on behalf of the appellant, ANSWER Coalition. This case is about the First Amendment rights of the people to engage in assembly, debate, petitioning to their government on quintessential public fora alongside the parade route on whether the government may engage in identity-based viewpoint discrimination in the allocation of this public space. The government's presentation is that a certain amount of viewpoint discrimination is tolerable and that the government may be relied upon to be prudent in its flexibility. The Constitution has never tolerated this. Once the door is open for the government to engage in some viewpoint discrimination to marginalize dissent, that door cannot be shut. There is a reason why there's a bright line rule under the Constitution, and today's marginalization can only grow larger and larger. This is simply not an authority that the government possesses. The Constitution requires that there be a firm check on executive authority in the abridgment of First Amendment rights. Can I ask you just a basic factual question about your submission? Yes. What is it that you'd like to do? Is it that you'd like to – and let's focus on the Freedom Plaza area since that seems to be much of the focal point of the contentions for now. Is it that you would like to have the areas that are designated bleacher areas be used for something else, some kind of organized demonstration there, or is it that you want access – you're okay with it being a bleacher area, but you want access to the seats? What the appellant is requesting in this case is that the administration of the public forum down the parade route, alongside, not the parade route itself, but the sidewalks of the Parkland, that that space be available to dissenters, to the general public, to supporters, without any content-based, viewpoint-based discrimination as to who gets access to that space. So is it challenging – To be used for what? In other words, if we take as a given that there's going to be bleachers because people watch the parade, is it your clients' wish that those areas be used for demonstrations rather than bleachers, or is it that you want access to the bleachers so that you can sit there and watch, but also hold signs that protest the policies that you find objectionable? There are two pieces to that question, so I feel I need to answer each of them in order to accurately answer the question. So the set-aside of the space, what is designated as PIC bleacher areas in the regulations that are being challenged, that is the area that's being challenged, and what is requested is that there be an opportunity for equal access to that space. What has happened is that the PIC is not acting in an administrative function. It's not that it sets up bleachers, that the government or the NPS sets up bleachers, and somehow this is being done through the PIC, and that those are available to the public. These are set aside as exclusive use viewpoint exclusion zones for the PIC, so that when the PIC sets up bleachers, and in the record we have demonstrated, those bleacher tickets are not automatically available to the public. They are restricted based on viewpoint vetting to supporters and funders of an incoming administration. Now, the administration can make a decision that it wishes to allow some tickets to be open to the public. That has happened sometimes, but at other points, and in all cases, large numbers of those tickets, but not all tickets. Okay, so then it sounds like from that answer that what you want is equal access to the bleacher tickets, not access to the space to do something other than use the space as bleachers, because you can imagine a situation in which what you'd like to do is organize protests of a type that's incompatible with use as bleachers. And that, too, Your Honor, because Freedom Plaza, to focus on that space, is a unique demonstration and assembly site. It is recognized by the NPS, and that again is in the record, that that space, above all spaces, is uniquely configured for demonstration and assembly. So in fact, they do seek to be able to access that space in order to engage in petitioning government and free speech activities, and not necessarily have that space set aside for bleachers in a way that restrains. As to that, let's just focus on that part, because it sounds like you have two submissions then. As to that, what's content-based about saying that this space should be used for bleachers rather than for something other than bleachers? Because what we'd like to do is set up an area from which people can watch the facility. Well, what's happened here is that that would be a different case if that was before us. If the Park Service had set aside space on a viewpoint-neutral basis, on a content-neutral basis, and it was the Park Service itself setting aside space, putting up bleachers, and making those completely available on a first-come, first-served basis to the public, we would be in a different posture. No, no, no. I'm not talking about who has access to the bleachers. I'm just talking about the fact that the space is used as bleachers, period. So we don't get – because it sounds like you have two submissions. One is we'd like to use the space for something other than bleachers. In other words, we don't want our people to sit there and watch. What we want to have the opportunity to do is to actually have an organized protest that's to the exclusion of the space as a bleachers, and the Freedom Plaza is an especially hospitable environment in which to do that because of the physical characteristics. And that makes sense. I understand why you might want to do that. But in terms of the use of the place, if you want to use it for something other than bleachers, then we're not talking about the criteria under which the bleachers themselves are allocated, the seats are allocated. We're talking about the reason that the space is allocated for use as bleachers. And as to that, what's content-based about that? Well, we are talking about both things. And because what the request is is that the picked bleachers set aside and the regulations be struck and that the Park Service be required to provide either equal access or fair administration of that public space, which they're not doing right now. Now, if the situation were – In your area, is that correct? The application is that bleachers may be an option in that area, but not necessarily, that they may be able to – that they would want to be able to use it for a collective assembly, for a collective action to be able to speak out. What does ANSWER want to use Freedom Plaza for? Does it want to put up bleachers? Did you put up bleachers before? Is that what you want to do, or is it that you want this to be no bleacher area for protests? Well, for – One or the other. What happens is what the – in terms of the permitting process with the Park Service, is that an entity puts in a request for a permit. They put in the things that they'd like to see and do. They sit down and work with the Park Service as to what is accessible and what is allowable. The dominant thing that ANSWER wants to be able to do is to be able to rally and assemble in that location. In 2009, they shared the space with the PIC. And in 2009, they were able to set up bleachers in that space with the PIC. On other occasions, they have had – they've sought to rally. So, I mean, without bleachers. So the goal here – You put up bleachers in John Marshall Park, too, when you were there, correct? Or am I incorrect? You put up bleachers in John Marshall Park when you were there, correct? In John Marshall Park, there was a tiny little subset of a tiny row of front bleachers. But the goal was to have – that was to have the assembly to have people to try and maximize that space. So there was an assembly of people. Well, the problem with John Marshall Park, of course, is it's completely different than Freedom Plaza. It is, as the Park Service recognizes, a passive recreation area. And it's full of obstructions. I got the attraction of Freedom Plaza. For 2017 inauguration, you mentioned that you have put in an application. Was your application first in time? That application is in dispute. They were first in time. They stood there before the doors opened. There was no one else standing there. And they got their application stamped at 8 a.m. at the first possible second that it could be done. When we sought to determine if there were any other applications, we've gotten back a second application that is written by the Park Service. It's stamped at the exact same time. But yet there was no one there. There was no one at the machine. There was no one stamping. So we believe that, yes, the anti-coalitionists were first in time applications. And they also at issue, for example, would be the sidewalks at other locations up and down the parade route that at different moments hold particular significance, like right now the sidewalk in front of the Trump International Hotel. That, too, is set aside as an exclusive use zone that, again, the public that is set aside based on viewpoint vetting and viewpoint access. You mentioned that this is the second time you've mentioned that set aside based on the viewpoint vetting or viewpoint access. And I wonder where you would point us to in the record that supports that claim, that somehow at the threshold when the NPS is making permanent determinations, that it is taking into account how the PIC or the non-PIC groups are planning to provide access to the state. I take it that that's an important part of your claim of why it is content-based if they were to pick over other groups. Correct. Where in the record should we look for that, for support of that or for that allegation both? We have cited those propositions both in our opening brief and in our reply brief with reference to the record. In shorthand, there are two mechanisms by which this is identified. What the Park Service does is it sets it aside for the private partisan Presidential Inaugural Committee. It's a private political entity. It is not a public entity. So they are determining based on that determination that the public fora is being given to a preferred public actor that is espousing government-favored views, which is, of course, different than government speech. That's one layer of your case. So the second layer. That alone is identity-based and, therefore, in your view, content-based. The second layer is the issue of the Presidential Inaugural Committee itself, which engages in its delegated unconstitutional authority to itself determine then who may access the space that has been set aside to it. And we have put in the record the two different examples of how that is done and has been done, one being, for example, that the PIC has set aside tickets so that when the public, for example, calls Ticketmaster and seeks to get tickets, those tickets are not available to the public. Those tickets are available. Ticketmaster is given a – they have a list, and people, funders, and supporters are given numbers by the PIC, and unless they present a particular number identifying them as allowed to get a ticket from Ticketmaster, they can't get them. But it's not your allegation that that is part of what is known to or a criterion for the Park Service in its decision. Yes. So in its decision, the Park Service, and in promulgating the regulations, and throughout the history of this litigation and the prior litigations over the inaugural program, the Park Service has repeatedly used reference to the fact that the PIC, as a private actor, is entitled to engage in its own viewpoint, its own First Amendment actions, without interference or injection of dissenting views inside its own speech. In fact, an oral argument at the lower court counsel for the Park Service talked about the right of the PIC and its supporters to have their own First Amendment expression along in Freedom Plaza without interference from other viewpoints. That has been acknowledged by the government throughout that it is viewpoint-based. When they promulgated the regulations, the regulations themselves talk about this being set aside as exclusive use for the PIC, and when then they discuss and set aside for the PIC's chosen, taken in supporters, and that's... Let me ask you a minute. If the Park Service had a program of giving permits to groups wanting to hold parades, and they said, when you get a permit from us, you get, you know, this prime pass, and you get Freedom Plaza for the media staging, and you get, you know, this segment of, you know, one-tenth of the sidewalks along the way, and everything else has to stay open. That's something that a permit gets you as a parade organizer. And we don't care who you are, but you're going to get that. And then they take, without any viewpoint or content, all groups, all comers. Answer, PIC, armed forces, the Irish, you know, state parades. Is that, in your view, content-based discrimination? The Park Service normally has a permitting system. That is a first-come, first-served system. On Inauguration Day, that system is set aside. I understand, but I'm giving you a hypothetical. I'm saying, if, as a general matter, the Park Service had a permitting that allowed a parade permit holder to have control of Freedom Plaza on their parade day, would that be a First Amendment violation, and if so, why? I think it would depend on the day. So when we're talking about the Inauguration Day, and that, for example, Well, because the Mahoney Court recognizes the Inauguration as an event less private than anything else imaginable. I believe it places it in different circumstances than any other day. And here, the immediate stand is not a challenge. The facilitative stands are not under challenge. So the answer is, yes, it would be a first-time problem because it's Inauguration Day? Because it is Inauguration Day, no one is challenging the access to the parade room? Why not? If your theory is that it all has to be even-handed, and what PICC has applied for is not a parade permit, but what's called an event permit, which includes some seating as well as the parade. And under your theory, what if ANSA or someone else had gotten there at the first moment to apply for an event, including a parade, on January 20th? Because what a great day. A lot of people and a lot of media and the whole world watching. We'd like the parade. Are you saying that the government engages in unconstitutional viewpoint discrimination if it doesn't hand out the entire event permit, bleachers and parade, on a completely timestamp basis? With regard to the parade, no. This is what I don't understand. You're breaking it into parade and seating on the side. But they didn't apply for a parade permit. They applied for an event, a special event permit, which includes not just the parade route, but also some seating and media areas and porta potties and security areas, all these types of things. It's a package deal. And so I'd like to know what the answer to the question is. If you had applied for a special event permit that included both a parade and area for your individuals to stand along, those who aren't marching want to stand on the side and cheer, and you'd been first, would they have had to give it to you? For the parade, there's no application for the parade. The parade is seriously distinct from the public forum on the sidelines. No, that's the question. I don't know why that is. No, they have never sought the parade route. They're not trying to eject themselves. Under Hurley, we do not believe that they would be in the parade. We do not believe that. No, no, my question is, I'm going to try it one more time. You're not getting in someone else's parade. Whether they could take the parade route in whole on Inauguration Day. If you're the first application in seeking to do an event that includes a parade that day, would they have to give it to you? On Inauguration Day, I don't believe so, because I believe there are unique circumstances related to that parade. And, by the way, the parade route is not under jurisdiction of the Park Service. It's under jurisdiction of the MPD, but the Pennsylvania Avenue. It's the sidewalks in the park land that are above the parade route. It's the opportunity for people to be able to communicate. The First Amendment applies to D.C. just as much as the federal government. I was just saying in terms of a permit application. And so, for purposes of issuing parade permits, at least, there's no First Amendment problem with favoring PIC for the parade route on January 20th. Is that your position? Well, for favoring the government, the parade route is actually administered by the Armed Forces Inaugural Committee and it's facilitated through that. The PIC has a role in terms of selecting. Again, is there any problem with favoring that there will be an inaugural parade and no one else is going to have a parade that day? Well, we do not argue that. I don't even argue it. Because we believe that the inaugural ceremony area is unique, that there are arguments that can be made to the unique nature of that, to the parade route itself as an expression on that day, to the presidential reviewing stands that are in front of the White House, which have also been addressed in other litigation in Saffron about the unique nature of that. Why doesn't the Constitution allow that uniqueness to include a limited section of seating for the people? It's their party, it's their parade, it's their event. And so we're going to let them have a set-aside for the people that will clap. Or even they won't clap. They're just going to have a set-aside for some seats. That's just part of the package deal that comes with it, whether they clap or not. Why isn't that part of it? You can ask, but if they set aside the whole parade area, we know that's way too much. But shouldn't the argument be not segregating out the bleachers and that seating as though it is entirely distinct from this event? But shouldn't the inquiry be, there's this event, and it's perfectly constitutional to have a set-aside. When people apply for such events, they want to have some bleacher areas as well, whether it's PICC or anybody else who's parading up and down Pennsylvania Avenue and working with us. They want to have some set-aside area. And we just need to ask whether the set-aside that's been done as part of this event is itself a content-based form of discrimination. And if they just say it comes with the event, then we just need to look at whether it's too much, whether it's all the good land set-aside for the people that are doing the parade and everybody else is shoved behind trees where nobody can see them. Isn't that the analysis instead of breaking this out into what the speech is that comes from sitting on a bleacher seat? No, Your Honor, I would disagree with that analysis. And the reason why is that the park lands, the sidewalks, the spaces abutting the parade route, which are acknowledged to be quintessential public form on a day that is acknowledged to be less private than anything else imaginable, it's not a private party. And there is space set-aside. I'm not understanding this logic because if you have the July 4th event, for example, on the Mall, there's the symphony plays and there's seating there. There's preferred seating. I'm sure that I've never been, but I'm sure that somebody makes a determination of who gets to sit in those choice seats to watch the symphony firsthand as part of the July 4th celebration. Now, there's no doubt the entire National Mall is a traditional public forum. It's the quintessential public forum, maybe the most important public forum in America. But for those purposes, somebody in the government gets to decide who sits in those seats because it's a July 4th event and part and parcel of holding that event is deciding who gets the choice seats. So why isn't it just part of holding the event that there are prime seats that are along the route, and as Judge Ouellette pointed out, we can talk about whether that's the right number of seats or whether too much space has been allocated for seats. But part and parcel of holding the event is to have some seats that are prime seats and the entity that's putting on the event gets to determine who gets those choice seats for friends and family and things of that nature. Well, in fact, on the 4th of July, the vast open spaces of the Mall and spaces around where the symphony occurs, the public is allowed to come. There isn't a vetting viewpoint. But what about the seats? There's nothing in the record as to seats. I don't know how the seats are distributed. Well, let's just hypothesize that not everybody gets to. It's not just first comes, first serve, and there's not a mad rush to the seats. I assume that there's some allocation to determine who gets to sit in those seats. I might be wrong, but let's just assume that. I don't assume that. Let's just assume that. What's wrong with having prime seats in particular locations that are for the event, the people who are running the event, to dole out? That's part of having the event. On the 4th of July, the seats are facing the symphony, which I would say is completely different than people who are assembling for speech and debate purposes on the inauguration to communicate with the president. Aren't the seats facing the parade? The 4th of July? No, in the inauguration. No, that's what I'm saying. On the 4th of July, the seats are facing her. In your hypothetical, these seats are seats that are, presuming there are some set-aside or set-aside based for the symphony, which I would say is completely different. And, again, I don't know what they do, but I would say it's completely different than on inauguration day when you're talking about public forum and communicating with the president. Let me just ask this. Do you think there's anything wrong with having a block of seats that's set aside for friends and family? I think that there are seats that are set aside over at the Pennsylvania Avenue, over at the White House. But I believe that the other seats, and, again, the burden on the government. That's okay. The seats closer to the White House than the ones that are currently set aside. And we addressed it in our briefing. It has unique security functions, unique considerations. It was addressed, I believe, also in Safran. But here the government has an obligation to say it's not a reasonability test to public forum set-aside. The government has an obligation to put forward its burden. As to one, if this is content-based, they've never advanced a compelling interest ever. So that is fatal. So we're getting back to whether it's content-based. Whether it's content-based. Is it your claim that if a group utters an answer had been there at 8 a.m. and been the first stamped, and their plan was to congratulate the president and the whole sign saying, President for Life, and maybe they wanted to have bleachers, maybe they wanted to have a demonstration, if they wanted on that raised freedom flag, that they would have been granted the permission that you were denied? Is there any basis in the record to conclude that such a group would have been granted priority where answer wasn't? Where answer wasn't? No. But if they were first, they should be granted priority. What's in the record is that the priority exclusive set-aside by operational regulations is for the private partisan pick. It's not set-aside for neutral administration. And that's inconsistent with the notion. That would mean that you cannot say that the event organizer gets some reasonable amount of seating for its people. It's part of having the event. I think it depends on how we define the public force status or the obligation of the government to meet a burden as to any type of set-aside that is a viewpoint-based set-aside. Let's imagine on January 21st, another group applies to coordinate with D.C., the federal government. They want to have a parade from the Capitol up to as close to the White House as they can get. And they want to have an event. And it will include a parade protesting whoever has just been inaugurated as president. And they would like to have some seats, the same 13% along the route. And you're saying, and they grant it. They go, this is how the event, this is the package deal. Do you have any reason to think that wouldn't get granted? I believe it can only be granted based on a first-come, first-served basis. So anything can be granted within that, that's under the Park Service's jurisdiction under a first-come, first-served basis, yes. If it's first-come, first-served. But what's happening by operation of the regulation is there is no first-come, first-served basis. And it is a government set-aside, not for a neutral administration of space, but for a viewpoint-based administration of space. Well, at least as of 2017, there's at least a fact dispute as to first-come, first-served. Yes. And is it your position that if you, and I understand it's a fact dispute, if you lose that fact dispute, your case is over? No, because regardless of that, we believe that there is still a dispute as to the set-aside of the. . . And what would that dispute be? It wouldn't be a content-based one, right? You say they were there, if the facts were that they were first in time, then what would the dispute be? The dispute would continue because every four years we're going to have the same problem. There is an injunction right now in place that stops the Park Service from operating in a discriminatory fashion to administrate the permitting system for the Park Service to have somehow had a separate stamping system or stamped later in respect to the violation of that injunction. I'm just assuming that there was actually a nanosecond there that someone didn't see that it is first in time, that that's a factual determination. So then that dispute's gone. There just isn't a dispute that that was first in time. Then is your case over? No, the case is not over because the issue is striking the regulations as they stand and we would have the same problem every four years. If you're talking about this inauguration, there is another permit that's first in time and that permit operated without the regulatory set-aside. We're the court to strike the regulatory set-aside. And then it turned back to the first-in-time permit. Then whoever is first in time gets that space, whether it is any group of any ideology or any position. Everybody who does this event, when they do an event and a package deal, they get a set-aside as part of their package, no matter who it is. Then you would agree that at least would not be content-based or viewpoint-based discrimination. I think the problem that I'm having is because the permitting system has to operate within the way that the Park Service permits do operate and the way the system has been written as the Park Service has been brought to the court over and over again for 40 to 50 years to fine-tune a permitting system that would operate within constitutional bounds and have no viewpoint discrimination and would allow for a first-in-time set-aside. Whoever comes and puts in for a permit and says, I would like this space and I would like this space, they're first in time for that permit. The other thing is the government has never met a burden to show why there's a unique reason why they must have these particular spaces or that it advances. It seems they get to have some spaces to have bleachers. I assume you don't dispute that proposition, that part of having a parade is having some seats. It doesn't have to be all of them, but some number of seats for preferred guests that attend the parade. And they do have that. They have massive grandstands and bleachers along Pennsylvania Avenue by the White House. And whether or not the PICC, as a private part of an entity, put in for set-aside bleachers for funders and donors, I mean it's an organization that raises tens of millions of dollars in funds, does not have to disclose where the money goes, and has millions of dollars left over every year. The government has no interest in that. But then that sounds like an argument not that it's content or viewpoint-based. It's just that too much bleacher space has been set aside for the PICC. So they've got the Pennsylvania Avenue stuff near the White House. That's more than enough. And Freedom Plaza just shouldn't be part of this. Well, to point to what the Park Service said itself when it set aside the space in front of the White House, the Park Service has not administered this space except since the late 90s. And there is nothing on the record that there was a set-aside like this that these seats were not open to the public. In fact, it appears historically that the seats to the extent there were bleachers in whatever spaces were open to the public. So the issue of whether or not now there is a right to set-aside only for funders and supporters. But when the Park Service has promulgated the regulations in response to Quaker actions and women's strike for peace cases, setting aside the space in front of the White House, they said in the regulations that the justification was that it served and satisfied their need to provide space to the incoming administration and the PICC and that that satisfied the need. So this later taking of space, they said that need was already satisfied. The burden is on the government to put on the record why they would need to have a viewpoint-based set-aside of public space. That's what the interest is. They have been unable to identify an interest. But it's not – I feel like we're coming back to the same point every time. It's not viewpoint-based insofar as the set-aside is to provide preferred seating for friends and family, because you've already said that with respect to the White House. So we know that there's at least some seats that the government who's hosting and operating the parade gets to set aside for friends and family. And these are more seats. And you might – it sounds like your argument is, well, they've already told us that the White House seats are enough, so this is too much.  We are not conceding that the White House set-aside somehow then legitimizes taking space elsewhere. In fact, in addition, when they promulgated this regulation, they said that this set-aside of the three-quarters of space in front of the White House with a quarter left open to the general public elsewhere in Lafayette Park, which has never been challenged in this court. So it hasn't been challenged on a constitutional level. But the fact has unique security concerns, unique reasons why it's appropriate to set aside that space. But when they promulgated the regulations, they said that in so doing they satisfied any need or obligation. And moreover, they said that it was justified because the rest of the public forest space was left open, regardless of viewpoint. When they promulgated these regulations, again, going back to the question about the viewpoint issue in the regulations, they there, the folks who said that acknowledged that this is viewpoint based for the use of the pick and that when they enacted the commitment rule, people could come in regardless of viewpoint. Does it have to be labeled viewpoint for you to argue this point that Freedom Plaza is just a bridge too far? No. In fact, we don't believe the government has failed to meet its burden, even under an intermediate scrutiny standard. Absolutely. They have not met that burden. They had an obligation to put record evidence in before this court that showed what their interests were, that the restrictions that they have imposed. Can I ask you a fact question? Yes. The other, the non-Freedom Plaza bleachers, the ones up near, closer to the White House, are those apart from the reviewing stand, are those bleachers also sold for funds? Or is it just the Freedom Plaza ones? We don't know. There's nothing in the record evidence about that. We just know in terms of people seeking tickets for bleachers, which presumably would not be the White House bleachers because of security issues, that they cannot, I can't speak to. The government's never put anything, no record evidence on this issue. You argue that there was political or viewpoint based vetting in the giving of receipts. And I asked you if you could put instantly some record on that. And you directed me to your brief. Do you have any more specific? May I do that during the break? And I'll return back so I don't use up time now. And I'd be happy to point to that. The other element that I was getting to about the vetting, which is also in the brief, is that, in fact, in the last inauguration in 2013, when the Park Service set aside the space for the private partisan political organization, they told the answer coalition the permit is deemed granted unless denied within 24 hours. So the permit is deemed granted. They did not revoke the permit. They said that we won't know whether we're revoking the permit until the state tells us whether they want the space and whether they'll let you be on it. So for 2013, the answer coalition then had to sit down with the presidential inaugural committee, who has delegated this unfettered discretion and authority to engage in viewpoint vetting, where they questioned them about their political views, their intentions, what message they wanted to convey from Freedom Plaza, and came back to them afterwards and told them we do not believe that it's compatible, that we have a competing interest in the expression of speech from the space, and therefore you can't have it and we have it all. So there, too, is both a viewpoint discrimination but also this other element of unconstitutional administration where the Park Service is setting up a system where it's giving this authority to a private entity to engage in viewpoint vetting, both in terms of the sale of tickets and in terms of access to the space overall. And for the seats that are closer to the White House that you don't contest, could you make the same argument about content or viewpoint? I think with the seats closer to the White House and, again, looking at the court's rulings in Saffron and related cases, that because those seats are distinct, they have a unique security concern, that was the issue in Saffron as to who can have access to the space in front of the White House. I'm not sure about that. There are seats in addition to the reviewing stand, correct? There are large grandstands. In addition to the reviewing stand, there's also, you said, part of it that's publicly accessible, correct? No. There's an outside corner of Lafayette Park, one corner that remains publicly accessible. Publicly accessible. So they would have to show. So put aside the reviewing stand, which definitely I would think would be an excellent argument that there's security concerns there. For the rest of it, the only thing that saves them from the same First Amendment challenge would be an assertion that for security reasons, they have to let PICC hand out those seats. Is that your point? No. I was addressing what the court addressed when it adjudicated access to the White House area space on Inauguration Day. And the court went through. Then why can't you, if it's not security-based, then why wouldn't the same challenge be available with respect to those seats? Because that is, again, a unique location that is. What's unique about it that makes it unique? That the President of the United States is sitting there engaging in ceremonial function of reviewing. That that is a unique area and a unique purpose, which is different. The public gets to be at least a corner of Lafayette Park. Not along Pennsylvania Avenue in that. They're back over by H Street, I believe. It's a distinct set-aside over there. And it was set-aside, again, on the basis of- Your First Amendment arguments, your sort of uber First Amendment on January 20th say, look, they've got keys enclosed in, I'm sure, glass, bulletproof glass, and they can do whatever they need for security. But being within earshot of the incoming President, boy, the First Amendment interest, it's at its apex. Why isn't your argument for the opposite of what you're saying? If there's not actually a security need as to those stands- I'm not saying that there isn't a First Amendment interest there. I'm saying that, as the court adjudicated in Sanford, it went through the First Amendment interest as against the unique site, the unique location- That was more than a reviewing stand? Pardon me? That was more than a reviewing stand. It was just that area in front of the White House. Okay. There's large grandstands on both sides of the street. Okay. Is that the only place there's grandstands? I thought there were more grandstands a little bit further away on Pennsylvania. It's the Pennsylvania Avenue block between 15th and 17th Street. That area that's set-aside that's now distinct is closed to traffic, that's closed to vehicular traffic. That area is set-up and set-aside, but that area is distinct, is unique, is not the case that's before this court. The case isn't before us, but we're trying to understand what the implications of a ruling, based on the arguments you're advancing, would be for that area, put aside the reviewing stand itself. We addressed that issue in our briefing, but we believe, as the Saffron Court addressed, that there are unique considerations to that location that are not present when you're talking about the sidewalks in the parkland of Pennsylvania Avenue. What is the unique consideration, again, that gives the government greater leeway to engage in precisely the same form of ticket administration in that location, as opposed to the location we're talking about today? We don't know that they are engaged in precisely the same form of ticket allegation. Again, the record is of Des Moines and Pennsylvania Avenue. Yes, they are the same as it's there. But with the other spaces, those tickets are sold to people as a fundraising mechanism. There is no evidence that there is some security evaluation as to who gets to sit there. It was simply whether or not people were funders or supporters. In the record, we were able to show that they had lists with identification as to sort of the order of who gets the tickets. And the general public was never allowed to get the tickets, in what we were able to show. Now, for the Obama inauguration, that made a determination that was going to allow some of the tickets, wherever, to be allowed open to the public. Again, that's not the same as the space on Pennsylvania Avenue. This is the one area where the people are allowed to stand and express themselves, regardless of viewpoint. And our assertion is that it's the government's burden to be able to put forward that it has met a public forum test in order to set aside that space, and they have not done that. On the question of which public forum test, as between an immune scrutiny and something more strict, that turns on whether the restriction is content-based or not, and whether it has to do with expression or not. Can I just ask this? Yeah. In the July 4th situation, would you say that the people who have the best seats to watch the symphony and are therefore given choice tickets to watch it, are they engaged in expression when they're watching? I think because the symphony is not the government, and there's not an expression to the symphony. They are a passive recreational audience. But also the vast portions of the mall are not set aside based on viewpoint. There are security checkpoints, but no one is being ticketed as to who may come in and who may come out. I guess the question I'm asking, though, is when you set aside seats to have a choice vantage point for an event, when the government sets aside those seats, is it providing a forum for expression for the people that sit in the seats, or is it just providing a vantage point for people to watch expression in the form of the parade? I think that question turns on the medium at issue at the moment in time. So the medium at issue at the moment in time that we're talking about is the sidewalks and the parkland along Pennsylvania Avenue where people want to be able to come, regardless of viewpoint, to be able to express themselves regardless of viewpoint or just witness the parade as it's passing by and the president as the president passes by. That, I believe, is important. I'm going to say that on the Fourth of July, which is really apex of the American people's expression of our patriotism. And if somebody said, I want to have equal access to the tickets, it's because when the symphony plays the national anthem, my plan is that we want to stand up and turn our backs. And that's our plan. And so everyone who's not doing that is expressing a patriotic view. And those of us who want to go on there and do that are expressing, demonstrating, counter, really important, core, visible political view. So isn't that analogous to what you're asking for here? And wouldn't you have to concede that in that instance, that allowing a private group to have, or allowing any organizing group to have a friends and family section would be in violation of the First Amendment? I would not, again, because I believe that the medium and the location of the event is different. The same reason the Mahoney Court said that the inauguration is a less private event than almost anything else conceivable. And it is that moment when we have a peaceful transition of government and we have an expression of democracy. It is for the people to be able to come along the parade route and debate. Do you think the July 4th event on the Mall is meaningfully less public than the inaugural parade? I'm talking about the difference between the president coming by and people being able to communicate themselves. I'm referencing the Mahoney Court's view of that event. And we're going back and forth between the seats over in the Capitol area where the symphony is, the vast breadth of the National Mall, which, again, is not set aside based on any type of viewpoint. And the Park Service does have a set aside of national ceremonial events. So if the Park Service can set aside spaces for national ceremonial events, that is one thing. But can it set aside spaces based on a viewpoint allocation? Can it set aside the space? It is not that the Park Service set aside space and said, nobody gets exclusive use and everyone comes first come, first serve, or that they said we're going to do bleachers in some locations and there would be an issue as to what were the appropriate locations for bleachers. But, again, those are completely open. What they said is we're taking very significant areas along the sidewalks, along the parkland of Pennsylvania Avenue, and we're setting those aside on an identity-based, content-based determination, which runs afoul of Reed. But it's viewpoint and content-based if the people who are being allowed to sit there are expected to engage in expression, as opposed to giving out choice seats to watch expression. That's what seems a little bit different about this. No, because it's viewpoint and content-based in the first step because it's given to the private, partisan Presidential Inaugural Committee who then can make a determination as to who comes along. The government itself has acknowledged that that is. That's just an early issue, right? If we look at it as a package deal, then once they've got their package, to whom they wish to give it out is much like Hurley. It's their event. If the set-aside is otherwise reasonable, it's not too much, it's not all the best parts where protestors can't be seen in the other locations, then if the set-aside is reasonable in a mountain location, then how they privately allocate it is not a content-based problem for the government. I don't believe that it's a Hurley application as to the spaces alongside the parade route. It is not a private event. It is a public event. It is paid for by the taxpayers. It is put on by the government, the parade route itself. It is put on by the American Armed Forces Inaugural Committee. It is very different than the private, partisan take. And there is nothing in the record that shows that removing these bleachers serves even a significant, I mean maintaining these bleachers or maintaining a viewpoint-based or set-exclusive set-aside for the pig advances any government's significant interest, even under their preferred intermediate standards. If it were determined that it wasn't a viewpoint or content-based problem and when we're just looking at the reasonableness of the set-aside, so put aside viewpoint and content, what is your best argument that this is just too much of a set-aside or too much choice land? Well, the government needs to first obviously put forward a significant interest. And the significant interest that is put forward, it then has to show that there's a real nexus between the challenge regulation and that significant interest, that there is a harm to be averted. And it's never done that in this case. And specifically with regard to Freedom Plaza, the very fact that the Answer Coalition shared space on Freedom Plaza in 2009 and the parade went on and there was inauguration and there was no threat to the celebration or the parade or the inauguration, which is what the government has put forward as its interest, that shows that there is nothing about the regulatory set-aside in Freedom Plaza that advances a government interest. And the government has never identified an interest in particularity. All the interests are in the abstract, because there is no challenge to facilitative measures like toilets. There's no challenge to the Armed Forces Inaugural Committee facilitation stance. There's not a challenge to media stance. Isn't it your position, Ms. Forhead and Hillary, that you're really trying to say let's do a Mahoney analysis and the unit of analysis is the Freedom Plaza as such? And that if we look at it that way, this is just a distinctive area. It is a protest area. It is a central, historic, named, heightened protest area. If we look at it that way, then it's like Mahoney in that protesters have been excluded. Is that kind of another way of putting your position? I think that when it comes to an issue where the government to get through its standards and meet an issue of narrow tailoring, yes, we believe that Freedom Plaza, the answer to your question is yes, but also that the government has to meet its burden for any type of viewpoint allocation of space or any type of allocation of space at all that works to the abridgment of dissenters. So they have never done that for any of these spaces along the route. And just saying that the government should have leeway or reasonableness leaves the door wide open for an abridgment of First Amendment rights that we believe is very dangerous. There is a reason that there are bright-line rules for how the government must allocate space, and that has never been presented in this case to meet those standards. So what we're arguing is those standards have not been met. They haven't put forward an interest. But Freedom Plaza is unique. It is named after Dr. Martin Luther King. It is acknowledged by the Park Service as being a unique space for demonstration and assembly. It stands significant among all other spaces, but there are obviously depending on circumstances unique interests in other spaces that might be along the sidewalks as well. But we would not say that they're identical to Freedom Plaza. Freedom Plaza does stand unique. Thank you. Thank you. We'll give you some time for rebuttal and we'll hear from the government. May it please the Court. In 1975, this Court held in a Quaker action versus Morton that the National Park Service could establish National Park Service events and reserve time on government property with a schedule of reoccurring events. And consistent with this circuit law, the National Park Service has designated six National Celebration events that have been given priority use of certain limited park areas during their occurrence. All of these National Celebration events have been established through a rulemaking process, including the Inauguration Day celebration. There has been a set-aside for the Presidential Inaugural Committee, as has been discussed here, for the area in front of the White House and at Lafayette Park since 1980. And the challenge here is the 2008 National Park Service rulemaking that increased the set-aside to give additional limited areas to the Presidential Inaugural Committee on Inauguration Day. So your threshold argument in your briefs is that the set-aside is government speech. That's correct. And what is the government expressing when it gives out tickets and allows people to sit and watch the parade? It is the government event and the government decides who sits on those bleachers. So whatever is said by the individuals on those bleachers is the government speech because the Presidential Inaugural Committee is an arm of the President. Although it's a private entity, this court said in the Newdown case, it's a private coordinating group. It is directly responsible to the President. So if there is any speech in the bleachers that Tick has, it is attributable to what the President wants to be able to be communicated. But it seems like that's two different points because you're hedging by saying if there's any speech. So if your position is that it's government speech, then by hypothesis, by assumption, there's expression going on and it's expression that the government wants to have disseminated on the government's behalf. If you're saying, well, there might not be any expression going on at all, then it sounds like you're saying, well, not only is it not government speech, it may not be speech at all. Well, I think our first point is that it is a government set-aside that this court has said the government can do. It's definitely a government set-aside. It's a set-aside public property for government use. It is clearly for government use because you have the Presidential Inaugural Committee deciding who is going to be on the bleachers. It becomes speech because you have individuals there that are expressing some kind of speech, whether it is supportive of the President because the Presidential Inaugural Committee Why is sitting on the bleachers speech? I just haven't gotten this from either side. I mean, if you hold it beside it is, but if you just sit there watching the parade, is that speech? If the individuals were sitting there and saying nothing and conveying no message, it is still perceived by the public as government supporters. So I think in that sense, it is still government speech, even though there might not be something that is being verbally expressed. Everyone is perceived as a government supporter as a form of government speech? I don't think you want that principle, do you? Well, I think the point is that the individuals that are on the PIC bleachers have been chosen by the government. They are not chosen by the government. Aren't they chosen by the PIC? Well, but the PIC is an arm of the President. As the district court knows, the PIC is directly... But the PIC is an arm of the President-elect at the time the tickets are given out. I don't think the President-elect is the President until January 20th at noon. And so at the time the tickets are given out, it's the President-elect. That's correct, but at the time the parade comes by and people are sitting there in the bleachers, the President has been inaugurated, and therefore is the President. So at that point, the people who are on the bleachers... Which is the only reason to call this government speech, because the who gets to sit there is determined by this private entity, albeit one with a coordinating role. And then they're sitting there maybe unless they don't take their seats and then any first-come, first-served is sitting there as well. By then the person is the President. This is just an odd construct to call speech at all, let alone government speech. Putting aside the argument that I know is defending the decision of the district court characterizing the government speech, putting that aside for the moment and looking at your argument that there was no content-based discrimination made at the public forum, can you explain to us what the government's interest is in the set-aside generally, but even more particularly, why Freedom Plaza needs to be part of it? So the government interest overall is, of course, in having an inaugural celebration and in having activities associated with that, which includes the inaugural parade. And, of course, this is something that is recognized under the Presidential Inaugural Ceremony Act. So there is a congressional statutory recognition of a significant interest in this particular event. Do you agree that the governmental interest is in allowing, to the extent consistent with conducting this event, full free speech by the people of the United States, not just the citizens? There is certainly a government interest. Absolutely, and there is ample available space on the Pennsylvania Avenue sidewalks for demonstrators, for members of the public. Appellants don't even argue otherwise. And why this space, though, given that it does have a historic resonance for protesters? Why this space? And by this you mean Freedom Plaza? Yes. So, Your Honor, to be clear, Freedom Plaza is not an area that was just designated as an area that was amenable to demonstrations. It was designated by the Park Service as an area amenable for both demonstrations and events, special events. The inauguration is a special event. The reason that Freedom Plaza is given to Pitt is, one of the reasons, is because they put a media stand there. And the media stand is able to broadcast down Pennsylvania Avenue. It really is the best view of the inaugural parade because you can see all the way down to the Capitol. And this is broadcast, you know, across our country. It is broadcast internationally. It's how people view the inaugural parade. When you say broadcast, you mean they can film, they can see down? That's correct. And so the media stand. It's a raised vantage point and they get a good view, they get a long view in a prime spot. Well, that's both where the media is and then also the bleachers. That's correct. This is an area where Pitt already has been given a cornice in space where it's media stand. And the bleachers are put there as well. And what changed in terms of function and functional appeal since the time when it was more shared with protesters? Well, it is actually traditionally Pitt bleachers have been on Freedom Plaza. What happened in 2009 with that, the Park Service enacted its regulation in 2008. And there was some question as to whether or not it could apply to the 2009 inauguration because permits had already been submitted before the regulation became final. And so the government decided to reach an accommodation with the plaintiffs. And, of course, some of Freedom Plaza, two answers. When you say it's traditionally for Pitt bleachers, how long is that tradition? How old is that tradition? Your Honor, I believe it goes back at least to 1997. Okay. In terms of the Clinton administration and when there were inaugural bleachers there. And the record is unclear how much further back and, of course, at what point. I mean bleachers have been along Pennsylvania Avenue, including that area, for a very long time. I get that you want bleachers there. Just having bleachers there would be one governmental interest. This is a great place for people to watch the parade. What significant governmental interest? Let's just even start with significant, put aside compelling. Significant governmental interest is advanced by saying not just that there will be bleachers there, but that those bleachers have to be under the control of Pitt as opposed to open to the public. What's your significant governmental interest in that? Well, there won't be bleachers unless Pitt builds them. The government does not have funds to put up those bleachers. So there are no bleachers that are built by the government. The government could say this is a bleacher area. First come, first serve. We want this to be seen for all the reasons that you've just said. But what interest do you have in saying who builds or controls that scene? Well, I think you have to look at the interest a little bit more broadly, which is that the government has an interest in allowing Pitt to have bleachers. That the Pennsylvania Avenue sidewalks, according to this court in Mahoney, constitute a public forum. It is not a block-by-block analysis as to should there be bleachers on this block or should there be bleachers on that block. That's not the kind of micromanaging of the Park Service's allocation of space that the courts have traditionally engaged in, as the Supreme Court noted in the Clark case. The question is, is it within the constitutional zone? Is it part of the government speech? Your argument that we started with is that not only the parade is government speech, but the people who watch the parade are part of the government speech. Is it part of the government's, by hypothesis, I'm having trouble following that completely, but by hypothesis if that's government speech, then is the selection of the people who sit there and watch the parade, that's part of the government speech? Well, that's definitely part of the government speech, and that's pretty similar, Your Honor. And then the speech that the people who are selected engage in, if they engage in speech at all, because they can just sit there and watch the parade, if they engage in speech at all, you're saying that's government speech too? That's correct, because the government chose... And then what about the 10-minute set-aside that says that for the last 10 minutes, if nobody's sitting in the seats, then anybody gets to come and occupy the seats? That's correct. That's also part of the government speech? No, the individuals who come and occupy the empty bleachers are not part of government speech because they're not chosen by the government to sit there. They're simply allowed to come and occupy the seats. There's a 10-minute rule that says all are welcome at the 10-minute point. We embrace you all to come sit here. Isn't that part of your government speech? I think the distinction, Your Honor, is because the government is not choosing who those people will be. Why not? But they're choosing not to choose. I'm sorry. The government's choosing not to choose. They're choosing an open, public, first-come, kind of population, inclusive. That's correct. Essentially what is happening is that the government is allowing, in those scenarios, for the public to be a part of the government speech because there's no way in that scenario where there's empty seats, where there's nothing available. That's a very strange argument. My hypothesis is somebody has given a lot of money to the campaign but has a very strong disagreement with one point. They love the President-Elect on various things, but they have a very strong disagreement with one point. That person gets a ticket, and they stand up, and they use that time to put up a sign with that issue that is their bugaboo, with which they don't agree. That becomes the speech of the government. The government has allowed that individual to be on that stand. The message being conveyed may be different, but that's no different than the situation in Pleasant Grove where the government chose the monuments to put in a city court. In Pleasant Grove, they not only make the selection. The speech is both in making the selection and in maintaining the selection. The government speech is government speech throughout. Now, if this is all about selecting, that selection is not done by the President. Well, the selection is done by the pick that is an arm of the President and representative of the President. No, it's an arm at the selection time when we sell those tickets. I'm assuming these tickets are sold before noon on January 20th. That's correct. At that point, I assume President Obama is not going to sell these seats. That's correct. And he will be President until noon on January 20th. But I think at the time the selections are made, it's not the President. But it becomes the President's speech. But there's two aspects of speech, just as there was in Zoom. There's the selection and there's the maintenance. And it sounds like it's very different things at the selection stage than what happens actually during the parade. And I don't know how the government can be in control of selecting both of those, in control of both of those the way it was in Zoom. Well, I think in Zoom the difference is in terms of the message being conveyed at the time. The court recognized in Zoom that the message being received may not necessarily be the message that the government intended to convey. A monument may be viewed by individuals in a different way. This is about conveying. This is not about receiving. This is all about conveying. And I thought your point was that if one of the people comes in at the 10-minute mark and holds up a sign that says, I'm vehemently opposed to this person being President, that that would still be government speech? No. Okay. But if the President selects somebody. No, you said that if it's a supporter who comes in with the one bugaboo and says that, that is government. Not under the 10-minute rule. Just something more specifically about the record. There is an affidavit by answer that asserts that the National Park Service was vetting them and saying, well, what's your plan? Maybe you can work something out with the PIC. What are your viewpoints? What are you going to do? Is there anything that the ‑‑ what's your response to that, that that is sort of creating an as-applied viewpoint discrimination in the insistence on permit requirements? No, what happens, Your Honor, with respect to the Park Service's involvement with someone who has sought a permit that is from the area that is set aside for PIC, the Park Service will ask them what it is they want. The Park Service can make no representations as to whether or not that property is available until PIC decides whether or not it is going to use the property that has been set aside for it. So there are often conversations with permit holders or entities seeking a permit that occur during this time period because it's a fluid process until ‑‑ I mean, remember, PIC doesn't even come into existence until after the election. And so then it's not known immediately whether or not PIC is going to want all of the property that has been set aside for it for its event. And we can't emphasize enough that this is a co‑sponsored event between PIC and the Park Service. And so this set aside is for the individuals that they want to have, have some certain seats, be guaranteed seats, and therefore have tickets for those seats. So you're not contesting that there was some sort of political vetting for compatibility with the PIC message, whatever that might be, future PIC message, that the Park Service was doing in the event that the eventual PIC wouldn't need all this space and might be willing to share it? I don't believe that the evidence shows that the Park Service was doing any political, any vetting as to the position of whether or not the answer or any other demonstrator could be in a particular area. I thought the allegation was not with respect to the Park Service. Correct me if I'm wrong. But I thought the allegation was that the PIC. It was with respect to the PIC. And the PIC indicated, at least in one instance, we don't know what's going to happen the next time because I suppose that each PIC gets to decide how to allocate the seats the way it wants to. But this time, the PIC representative at least asked about what the answer was interested in doing. We do not dispute that. That's correct. The PIC did. But if this court were to conclude that this… Now, why would PIC ask that? Because by regulation, this area is set aside for bleachers. It is set aside for PIC bleachers, not just bleachers. But PIC bleachers are bleachers. And so it's set aside for bleachers. And why is PIC asking questions about what answer it would like to do, unless it can't be with respect to doing something other than putting bleachers there? I think it's with respect to whether or not to sell tickets to members of ANSWER to use the PIC bleachers. And so that's why they're asking. But, of course, when the Park Service enacted this regulation, it's very important to remember that they have no idea how PIC is going to allocate the tickets. PIC could simply decide that all members of the public are welcome. We're just going to make the tickets available, and if you can buy them, then you can sit there. Or PIC could decide, as it did in the Obama Administration, we're going to have half of the seats available for our particular friends and family, and half the seats are going to be available to the public. So this just underscores the fact that when the Park Service enacted this regulation, that there was nothing that was content-based. There was nothing that was viewpoint-based about enacting this set-aside. It is consistent with the fact that there is a set-aside for the Presidential Inaugural Stand, and actually ANSWER's position, when you were looking at the extent, Your Honor, of what a potential ruling could be, would definitely call into question the Presidential Inaugural Stand, because it's much bigger than is needed just for the President. I didn't understand this part of your argument, because it seemed like one of your arguments was that because we can't know in advance what filter PIC is going to use, by definition, there's no content or viewpoint discrimination in the regulation. That's correct. Let's just suppose that PIC is just an arm of the government. Let's just suppose that, because that's your own argument, actually. Right. And if it turns out that PIC is using an ideological filter, every single time they're using an ideological filter, all right? Your argument is that as long as we don't know when the regulation's adopted ex ante that it's going to be an ideological filter every time, the fact that an arm of the government uses an ideological filter every time makes it non-viewpoint based. At the time the regulation was enacted, that's correct, because we don't know that they will do that. And then what about the actual use of an ideological filter? But then it comes back to the government being allowed to set aside property for its own particular event. And this Court has held repeatedly that the government can do it. So if you had a regulation that said the National Mall, are going to be handed out on an application basis by the National Mall Protest Advisory Committee, and the National Mall Protest Advisory Committee of every administration decides whether to hand out a permit based purely on ideology, it's only giving out protest permits or demonstration permits for demonstrations that are sympathetic to that administration. It can't be that there's no First Amendment problem with that, right? No, there would be. But that's so different than this scenario. What's the difference? Because this scenario is a national celebration event. So it is a recurring Park Service co-sponsored event. This Court has said the Park Service is entitled to have it set aside of its own land for the event. Even in Mahoney with respect to the Inauguration Day, this Court recognized that the government can set aside some portion of the Pennsylvania Avenue sidewalks for its events. The problem in Mahoney was that the government took all of the Pennsylvania Avenue sidewalks. And this Court said, in effect, that's too much. You can't have all of it. But this Court has recognized, even with respect to it. If it's government speech, why can't the government have all of it? Because this Court held that the government could. No, but that's the question. Because that case seems somewhat in tension with the proposition that even the allocation of spectators is government speech. Because if it was government speech, I thought the lesson of Summum and Walker is that when it's government speech, the government gets to do what it wants. Well, I think the lesson actually is that there are obviously reasonable boundaries. I don't know where that is in the cases. It's in the Mahoney case. But Mahoney doesn't say anything about it being government speech. Well, Mahoney does say that the government can set aside portions of its property for its own use. I know, but the question is whether Mahoney is operating on the assumption that this is government speech at all. Or is it saying that when it's not government speech, when the government is regulating private speech, we know that. That's public forum doctrine. That when the government is regulating private speech, if it's doing it on a content-neutral basis, then there's reasonable distinctions that the government can draw. But Mahoney is not a government speech case. Well, Mahoney certainly is a case involving the government setting aside property for its own use. Whether you call it government speech, whether you call it government... Did the Park Service argue that it was government speech in Mahoney? I'm sorry? Did the Park Service argue that it was government speech in Mahoney? The Park Service, I do not remember if those specific words were used. I do know, Your Honor, that the government argued that the government was entitled to set aside the Pennsylvania Avenue sidewalks under permit to set. Mahoney might predate a recognition of governmental speech by the Supreme Court, so I'm betting it wasn't argued there, so I just don't think... It wasn't argued, certainly, obviously, because Pleasant Grove and Walker had not been decided back then, Your Honor. But I think going back to a Quaker action, the government has argued since then that it is entitled to use some of its property for its own particular purpose. And I think here the set aside is limited. I think it's important to look at the fact that the government limited the amount of property that's been set aside for pick, that there are ample alternative avenues of communication open to demonstrators, available to the public. Answer does not even argue that there are not ample alternatives available. And when it comes to Freedom Plaza, I know my time is up, if I can, say, make one more point. When it comes to Freedom Plaza, there is nothing unique about Freedom Plaza that says that it must be given to demonstrators and that the government may not use it for its own event that is co-sponsored. In Sunim, which was a government speech case, the venue at issue is a park. That's correct. And there was no analysis, as far as I can remember, about ample alternative avenues. I'm sorry, there was what? There was no analysis, as far as I can remember, about ample alternative avenues, or was there? No analysis, sorry. Oh, no analysis. Well, we did the analysis, and we said there are ample alternative avenues. Are you talking just within Freedom Plaza? I'm talking about the Pleasant Grove case, sorry. In the other cases. In the Pleasant Grove case. In the Pleasant Grove. Actually, I believe there was, Your Honor. In Pleasant Grove, they talked about the fact that these monuments were in the city park and that there was lots of other places within that city park that individuals could be to engage in First Amendment activities. But with respect to the site, the government speech was the site of the monument itself, right? That's correct. And with respect to that, because it was government speech, you don't have to ask about alternative avenues with respect to the government speech part of it. Well, I think that's true, except that I would submit that Mahoney does, in fact, say that at some point the government speech could become unreasonable. But that is not the case here. Why doesn't the fact, the settlement for the 2009 inauguration, why doesn't that just show that the lines that are being drawn here by the regulation are not narrowly tailored for purposes of an intermediate scrutiny test, that you're burdening more speech than is necessary? Doesn't that just prove that you burden more speech than is necessary? No, it doesn't, Your Honor, because the forum, as this court noted in the Mahoney case, are the Pennsylvania Avenue sidewalks as a whole, not a block-by-block basis. So when you look at the Pennsylvania Avenue... But surely reasonable analysis. Look, if the pick were to be allowed everything that's an unobstructed view of the parade, and then everything on Pennsylvania Avenue that's either obstructive or removed back from the street, so further away from the actual parade itself, we'll leave that for everybody else. That would be a problem, right? That's what this court noted. So we wouldn't look at Pennsylvania Avenue as a whole and say, hey, you've got 50% of it. It's the cheap seats version of Pennsylvania Avenue, but you get that. We do at some level, at some level we have to look at how different vantage points, different opportunities to express speech are allocated, don't we? I do, but I think the level that you look at is not a block-by-block basis. But you also disagree that it's not Pennsylvania Avenue as a whole. I know. I think it is Pennsylvania Avenue sidewalks as a whole. No, but you also disagree that if there's the lousy parts and the good parts, and all the good parts are cut for pick and all the lousy parts are for protesters, although they are both along Pennsylvania Avenue, you would say we can't do that. We have to look at... Right. Okay, so we have to look at... So look at the frontage. Then you look at Pennsylvania Avenue sidewalks to look at the frontage land. That's the public forum. I agree with you that you can't say if you put protesters behind bleachers, but they're on Pennsylvania Avenue sidewalks, that that's not a consideration the court should look at. But if you look at the Pennsylvania Avenue sidewalks, the part that abuts the street, that entire area should be your forum, not on a block-by-block basis, but that whole area. And when you look at that whole area, there are ample prime alternatives for answer, including John Marshall Park, where it was in 2005. Well, what if I pick, in this case, they mentioned, you know, based on who the president is, what's prime might change. What if, in this case, pick said we'd also like to take the space in front of the Trump Hotel? Well, that may or may not become an issue when we look into who has jurisdiction over that and what the availability is. What do you mean who has jurisdiction? Is that not part of the parade route over which the sidewalks along the parade route over which you have jurisdiction? Your Honor, to the extent I know so far, there's a plaza area near the Trump Hotel, which is actually underneath, my understanding is, the Trump sidewalk. Right in front of it. So the sidewalks, to my knowledge, are available. Except I'd have to look at the map to see whether or not that is one of the areas where there is a pick bleacher, because the maps show you that all along Pennsylvania Avenue there are some areas that have been denoted for pick bleachers. But in terms of looking at the presidential motorcade coming up Pennsylvania Avenue, as long as you are on Pennsylvania Avenue and can see, you're near the street, you have a prime view. Indeed, the answer said in 2005 at John Marshall Park, that they were the first thing that President Bush saw when he turned onto Pennsylvania Avenue in his motorcade. Clearly a prime spot. When Murphy talks about the use of the entire Pennsylvania Avenue, I take it that it's applying forum analysis? It's applying that part of forum analysis that asks about availability of alternative avenues? In the Mahoney case, yes, Your Honor. And then in Suman, the court just says public forum analysis just doesn't apply because this is government speech. It doesn't apply with respect to the government speech. That's correct. So I'm still, I don't understand. And I could understand if your argument were, and I think your callback argument is, that even if this is not government speech and it's a regulation of private speech on a content-neutral basis, well then we look at alternative avenues and the fact that this is using 14% is a consideration we take into account. Correct. But if it's government speech, Suman tells us we don't do forum analysis when we're in the land of government speech. Why are we talking about alternative avenues? Well, I think I was just answering the question that I believe asks for where could the public go when you have to pick bleachers. Just as a factual question. Yes, that was what I was trying to address, Your Honor. But with respect to, yes, with respect to government speech, what Suman says is that, and Walker, is that you don't look at the issue of whether it's content-based or viewpoint-based. When it's government speech, the government is entitled to speak. And, again, here, if you look at the regulation, the Park Service dealt with First Amendment rights with scrupulous care to ensure that a limited area was set aside for the organization and the Park Service that are hosting this event and that, in fact, demonstrators and members of the public have ample prime opportunities along Pennsylvania Avenue during the inauguration celebration. Thank you very much. We'll give you three minutes for rebuttal. Thank you. In terms of the analysis of Freedom Plaza versus the sidewalks, we do believe the analysis of Freedom Plaza is a discrete analysis that it has to be evaluated distinctly from the sidewalks because it is a unique site, because of its dedication, purpose, function. The question with regard to the Trump Hotel, in fact, that space in front is set aside, though, as a pink bleacher, so it's reserved as an exclusive use area in Trump Hotel. But Freedom Plaza is unique. It is distinct from the sidewalks. The government asserts that the setting up of the media stand is an issue of its interest, but the media stand is not being challenged. The media stand is on the eastern portion of the plaza. It has the full view. Why wouldn't it be challenged? The press has no more free speech rights than your clients. As a facilitative function, it wasn't what the answer coalition put in a permit for. It could be challenged on the same basis by somebody else. I think that there are different issues when it comes to facilitative setting up media stands or announcer stands or Armed Forces Inaugural Committee stands that are distinct from the spaces that are open to spectators, and those areas that are open to spectators, can they be set aside on a viewpoint basis? Who decides whether it will be a media stand there? Is that the Armed Forces Inaugural Committee, or is that picked? It's written into the regulations that that is a media stand, as a distinct element. Yeah, they're challenging those set-asides. Not that it's set-asides. Not that it's challenging an aspect. The fact that it's in the regulations is no answer. We're not asking the court to strike all the regulations. It's not under the Constitution that it's in the regulations. So they've decided, but could that be challenged under the First Amendment? The part that we're challenging is to pick bleacher areas that are. . . No, but I think the question is why couldn't you make the same challenge because it's also in the regulation. There's a regulation that says there are certain parts that are cordoned off as bleacher areas. There's other parts that are cordoned off as media areas. The same challenge you're making to the bleacher areas. . . I get that you didn't make the challenge, but as a matter of conceptual reality and as a matter of theory, the same challenge could be raised with respect to the media areas. I think if there was a challenge raised with respect to the media areas, it would have a different analysis than the analysis when it comes to the spaces that are being made available for spectator space on a viewpoint basis. And I wanted to give Your Honor the record citations that were requested. And the Joint Appendix 440 through 443 discusses the TIC officials meeting with answer, and they weren't talking about who could get bleacher seats. They asked them about their goals, their messaging, their outreach, how they organized their political views. With regard to the ticketing and the set-aside, the appendix of 682, 677, and 676 goes through the ticketing process where they are set aside for funders and supporters. And I would note, too, that on the issue of the TIC and the government's support of the facilitation of the TIC, the Department of Defense also at one point in time, the Comptroller General found no legal basis for the Department of Defense to participate and support the TIC's balls and celebration events because they were considered private gatherings or parties, and that the proceeds go to the private non-governmental TIC, which is on page 52 of our opening brief. So throughout, there was this acknowledgment that the TIC is a private, partisan fundraising entity. And so setting aside these exclusive spaces for a private, partisan fundraising entity makes the distinction between whether or not it is an open space or a space that's allocated on a neutral basis. The government did, with regard to Your Honor's questions about the government's speech analysis, it is correct that the government has introduced the government's speech doctrine, which would say that the free speech clause does not implicate it, does not apply here. And they've done so only for the first time before this court with Mahoney and in the ensuing years after the government's speech doctrine became more present. They have never introduced or argued the government's speech doctrine in this case. They did not provide supplemental authority even after Walker came out in this court. So this is the first time that that presentation has been made. Thank you, Counsel. Thank you. Case submitted.
judges: Srinivasan, Millett, Pillard